*Magoon & Edings,* for respondent.

---

C. BOSSE, Assignee in Bankruptcy of J. A. AFFONSO *v.* MANOEL BRANCO and J. A. AFFONSO.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

SUBMITTED JULY 2, 1896. DECIDED JULY 9, 1896.

JUDD, C.J., FREAR, J., AND CIRCUIT JUDGE PERRY, SITTING IN PLACE OF MR. JUSTICE WHITING, DISQUALIFIED.

A mortgage was made, recorded and delivered to an antecedent creditor by a person who soon after became bankrupt. The mortgagee had no reasonable cause to believe his mortgagor to be insolvent or bankrupt, or to be contemplating insolvency or bankruptcy, and was a *bona fide* purchaser for a good consideration.

Held, the conveyance was good as against the assignee in bankruptcy.

OPINION OF THE COURT BY JUDD, C.J.

This is a bill in equity brought by the assignee in bankruptcy of one J. A. Affonso to cancel a mortgage of land which is situated in Honokaa, Hawaii, held by the bankrupt under Royal Patent (Grant) Number 1073 and known as the "Affonso Store Premises." The mortgage was given to one Manoel Branco under the following circumstances. Mr. Affonso, being a Portuguese storekeeper at Honokaa doing quite a large

business and having begun a coffee plantation, desired to borrow some money for his business. He learned through a mutual friend that one Manoel Branco, also a Portuguese, living at Laupahoehoe, some twenty miles distant, had some money to lend, and with his friend proceeded there and borrowed the money, $400, giving his receipt therefor, promising to secure its payment by a mortgage on his store premises at Honokaa as soon as he could get some person to draft the papers. Meanwhile he deposited his title deeds with Mr. Branco and went back to his home. This was on the 12th August, 1893. Affonso was then doing a good business; his credit was good and his principal creditor at Honolulu, Messrs. H. Hackfeld & Co., considered him one of the most responsible country storekeepers.

Affonso agreed to pay 8 per cent. per annum interest on the $400 every six months, but Branco preferred to leave it to be paid at the end of two years when the principal would be due. After a while business became dull and Affonso, though he had reduced his debt to H. Hackfeld & Co. from $5000 to about $2000, made less frequent remittances to them, being unable himself to collect promptly the debts owing him by plantation hands and homesteaders.

Affonso says that he was also embarrassed by having bought out a partner in another store in Hamakua, and that he sold his coffee plantation to pay debts with the proceeds at a loss of $1000. In the latter part of 1894 he was pushed by H. Hackfeld & Co. for payment of the balance of his debt to them; a suit and execution were threatened and he was advised to go into bankruptcy by an employe of this creditor. He went into bankruptcy on December 31, 1894. Not long before this he employed an attorney and notary to draft the mortgage in question to Branco to secure the sum he had borrowed, had it dated the 12th of August, 1893, the date of the loan, acknowledged it on the 22d November, 1894, and had it recorded and then delivered it to Branco. Branco says he had no notice of Affonso's insolvency nor any reasonable grounds for believing him to be so. Affonso says he never gave

Branco any reason to think he was insolvent. This testimony is not disputed.

It appears to us that the conveyance was made to a *bona fide* purchaser for value, Branco, who had no reasonable cause to believe his mortgagor to be insolvent or bankrupt or to be in contemplation of insolvency or bankruptcy. The statutory exception is complied with. See Chap. 35, Sec. 14, Laws of 1884. It may be that Affonso, finding that he was liable to be forced into bankruptcy, wished to prefer his fellow countryman and save him from loss by taking all these steps to secure him, but Branco, his creditor, had no knowledge of these circumstances. The conveyance was to secure a *bona fide* debt and was not a voluntary conveyance, though Affonso was not pressed to make it by Branco, who felt himself safe and had no cause to suspect that he was not secure. It was executed and delivered in fulfillment of the promise made at the time of the loan, to wit, in August, 1893.

Assuming that the mortgage, though dated August 12, 1893, created no lien on the property from that date and that the deposit of the title deeds created no lien, and treating the conveyance as made on the 22d November, 1894, and establishing the lien only from that date, Branco was, by all the evidence, a *bona fide* purchaser within the exception of the statute. Even if Affonso made a fraudulent preference by the conveyance, Branco did not participate in it, nor was he aware that such preference was thereby accomplished. The evidence even shows, it seems to us, that he had at the time of the delivery of the mortgage every reason to believe that Affonso's financial condition was sound, and therefore his mortgage is good as against the complainant in this case.

The decree appealed from is reversed and the bill dismissed with costs.

*L. A. Dickey*, for complainant.

*L. A. Thurston*, for defendants.